<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES K. BARBEE,<br><br>        Plaintiff,<br><br>    v.<br><br>AMIRA NATURE FOODS, LTD. *et al.*,<br><br>        Defendants. | Civil Action No. 21-12894 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Bruce C. Wacha's ("Wacha") Motion to Dismiss the Amended Complaint (ECF No. 42) and Defendant Brian M. Speck's ("Speck") Motion to Dismiss the Amended Complaint (ECF No. 44). Plaintiff James K. Barbee ("Barbee") separately opposed both Wacha and Speck's (collectively, "Moving Defendants") Motions (ECF Nos. 43, 46), and Moving Defendants separately replied (ECF Nos. 45, 47). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants in part and denies in part Wacha's Motion to Dismiss and grants in part and denies in part Speck's Motion to Dismiss.

## I.    <u>BACKGROUND</u>[1]

Barbee's 155-page Amended Complaint details a federal securities lawsuit against multiple defendants: Amira Nature Foods, Ltd. ("Amira"), Karan A. Chanana ("Chanana"), Wacha, Varun

---

[1] For purposes of considering the instant Motions, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Sethi ("Sethi"), and Speck (collectively, "Defendants"). (*See generally* Am. Compl., ECF No. 32.) Amira is a foreign entity that sells Basmati Indian specialty rice and other third-party branded food products. (*Id.* ¶¶ 13-14.) Amira sold on the New York Stock Exchange ("NYSE") between October 2012 and August 2020. (*Id.* ¶ 15.) Chanana is and was the President and/or Chief Executive Officer ("CEO") of Amira at all relevant times. (*Id.* ¶ 16.) After Amira went public in 2012, Chanana remained the largest shareholder of Amira. (*Id.* ¶ 19.) Wacha was the Chief Financial Officer ("CFO") of Amira and served as an Executive Director from June 2014 until at least August 2017. (*Id.* ¶ 22.) Sethi replaced Wacha, serving as CFO of Amira from August 2017 to June 2019. (*Id.* ¶ 25.) Speck then replaced Sethi, serving as CFO of Amira from late June 2019 to at least the time this matter was initiated. (*Id.* ¶ 30.)

According to Barbee, the "gravamen" of this suit is that between 2016 and 2018, Amira's operating subsidiary, Amira India ("Amira India"), fraudulently obtained roughly twelve billion rupees (roughly $175,000,000) from a consortium of twelve banks, led by Canara Bank. (*Id.* ¶ 37.01; *see also* Pl.'s Opp'n Br. to Wacha's Moving Br. 1, ECF No. 43.) As part of a larger scheme of financial fraud, Barbee alleges that Wacha made misrepresentations and omissions, and Speck made intentional and deliberate omissions of material facts "intended to induce shareholders to not sell their shares and/or investors to purchase shares," all of which contributed to Barbee incurring out-of-pocket losses in excess of $580,000. (Am. Compl. 14 n.6, ¶ 492.) Because the facts of this case are so lengthy and complex, the Court only includes certain relevant and representative aspects of the allegations against Moving Defendants.

A.      **Allegations against Wacha**

Barbee attributes his decision to invest in Amira to representations made by his securities broker, Vince LaCava ("LaCava"), who worked for Ameriprise Financial, Inc. ("Ameriprise") (*Id.* ¶¶ 35-39.) Barbee asserts that LaCava was informed by his alleged communications with Wacha. (*Id.* ¶¶ 38-47). Most of Barbee's allegations of misrepresentations by Wacha relate to what Wacha

allegedly told LaCava, which LaCava then allegedly repeated to Barbee when recommending that Barbee invest in Amira. (*See id.*; *see also, e.g.*, ¶ 35.3 ("For years, Wacha and LaCava discussed Barbee and Barbee's investments and Wacha addressed Barbee's questions about various issues.").) For example, Barbee alleges that "although [Amira's] short-term debt amount continued to grow quarter-over-quarter, Wacha told LaCava that the debt load was less concerning than it appeared." (*Id.* ¶ 43; *see* Wacha's Moving Br. 7-8, ECF No. 42-1 (identifying other such examples).) Although the exact timeline of Barbee's allegations against Wacha is unclear, Barbee's allegations against Wacha seem to span 2016 and 2017, with Barbee focusing in large part on the allegedly fraudulent statements contained within Amira's March 2017 Form 20-F filing (the "March 2017 Form 20-F," Brosnick Decl., Ex. A, ECF No. 42-3).[2] (*See, e.g.*, Am. Compl. ¶¶ 59-65, 65.2, 66.2; Pl.'s Opp'n Br. to Wacha's Moving Br. 1 (detailing the false financial statements certified by Wacha in the March 2017 Form 20-F).) The Amended Complaint also alleges that Amira's filed Forms 6-K for the six months ending September 2017 (filed November 2017) and December 2017 (filed May 2018) were materially misleading. (Am. Compl. ¶¶ 72-91.) As for these documents, Barbee appears to assert Wacha was responsible because of his position as CFO at different times covered by these filings. (*Id.* ¶¶ 72, 78.) As mentioned, Wacha resigned as Amira's CFO effective August 21, 2017, and remained with Amira as Executive Director until October 2017. (*Id.* ¶¶ 22, 22.1; Wacha's Moving Br. 5 & n.3.)

---

[2] In deciding motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), courts may consider documents filed with the Securities and Exchange Commission ("SEC") or those otherwise publicly disclosed and/or integral to a plaintiff's complaint. *See, e.g.*, *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (affirming judicial notice of documents "comprising [c]ompany SEC filings and press releases" relied upon in the [a]mended [c]omplaint, "documents filed with the SEC, but not relied upon in the [amended] [c]omplaint," and "stock price data compiled by the Dow Jones news service"); *Ieradi v. Mylan Lab'ys, Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) (judicial notice of the opening and closing stock prices on the NYSE). After reviewing the documents—SEC and other public filings—attached to the Motions to Dismiss in this case, the Court finds that they are integral to Barbee's Amended Complaint and, thus, may properly be considered to decide the instant Motions.

As for other examples of fraud, Barbee points to SEC filings, investor presentations, and press releases by Amira as motivating his decisions to purchase and remain invested in Amira stock, yet many of these allegations occurred after Wacha resigned from Amira in 2017. (*See* Am. Compl. ¶ 39.)

### B.    Allegations against Speck

The timeline for Barbee's allegations against Speck naturally begins in 2019, with Speck joining Amira as CFO in June 2019. (*Id.* ¶ 30.) Specifically, Barbee's allegations against Speck appear to be primarily based on: (1) Amira's public disclosures concerning correspondence in August 2019; (2) Amira's March 2020 Form NT 20-F (filed August 10, 2020) ("March 2020 Form NT 20-F"); and (3) Amira's March 2019 Form 20-F (filed August 19, 2020) ("March 2019 Form 20-F"). (*See id.* ¶¶ 286-319; Speck's Moving Br. 8, ECF No. 44-1.)

Speck's story begins in August 2019, when the NYSE sent Amira correspondence (the "August 2019 Correspondence") that informed Chanana "in writing that [Amira] would cease to be traded on the NYSE and would subsequently be delisted if it did not file by August 16, 2020 the Forms 20-F for the periods ending March 2019 and March 2020, plus the Form 6-K for the period ending September 2019." (Am. Compl. ¶ 281.) About a week later, Amira filed a Form 6-K (the "August 2019 Form 6-K") with the SEC, disclosing the August 2019 Correspondence and all the information that the SEC directed and recommended that Amira disclose. (*See id.* ¶¶ 282, 284; *see also* Aug. 2019 Form 6-K, Uretsky Decl., Ex. B, ECF No. 44-4; Aug. 2019 Press Release, Uretsky Decl., Ex. C, ECF No. 44-5.) The August 2019 Form 6-K described the August 2019 Correspondence "as a notice that [Amira] (i) was not in compliance with § 802.01E of the NYSE Listed Company Manual (the 'NYSE Manual'), since it did not timely file the Form 20-F for the period ending March 2019; and it (ii) had also violated [Section] 302 of the NYSE Manual by not promptly holding a shareholder meeting around the time the Form 20-F was due." (Am. Compl. ¶¶ 282, 284; *see* Aug. 23, 2019, Form 6- K; Aug. 2019 Press Release.) Chanana also disclosed in

the August 2019 Form 6-K that Amira "could come back into compliance with the subject listing requirements mentioned in the [August 2019 Correspondence] by filing the Form 20-F for March 2019 by February 16, 2020, and by holding its annual shareholder meeting as soon as practical thereafter." (Am. Compl. ¶ 283.) Barbee alleges that Speck failed to accurately disclose the contents of the August 2019 Correspondence as was his duty as CFO. (*Id.* ¶¶ 287-88.) Speck did not sign the Form 6-K, which was only signed by Chanana. (*See generally* Aug. 23, 2019, Form 6-K.)

On August 10, 2020, Amira filed the March 2020 Form NT 20-F, a three-page form document disclosing that it did not file its March 2020 Form 20-F ("March 2020 Form 20-F") by the SEC's prescribed due date of July 31, 2020, and the reasons why. (*See* Am. Compl. ¶ 291; *see generally* March 2020 Form NT 20-F, Uretsky Decl., Ex. D, ECF No. 44-6.) Speck signed the March 2020 Form NT 20-F; in this filing, Speck stated that as for the March 2020 Form 20-F, Amira would use "its best efforts" to file within fifteen calendar days of its prescribed due date. (*See generally* March 2020 Form NT 20-F.) This statement, Barbee alleges, was misleading, misrepresented material facts, and omitted material facts because Speck knew when signing this filing that the March 2020 Form 20-F would not be filed in time. (*See* Am. Compl. ¶¶ 291-93.)

In mid-August 2020, Amira filed the March 2019 Form 20-F. (Am. Compl. ¶¶ 33-34; *see* March 2019 Form 20-F at 4-5, Uretsky Decl., Ex. E, ECF No. 44-7.) This is the second of the two filings referenced in the Amended Complaint that Speck signed. (*See* Am. Compl. ¶ 33; Speck's Moving Br. 4.)[3] Barbee alleges that the filing was originally due by July 31, 2019, approximately one month after Speck became CFO. (Am. Compl. ¶¶ 30, 33 n.1.) According to Barbee, in the March 2019 Form 20-F, Amira disclosed a number of allegedly material, negative facts about

---

[3] The only other statements Barbee attributes to Speck anywhere in the Amended Complaint are vague assertions regarding work on Amira's March 2020 Form 20-F, but Barbee does not allege these statements were false when made. (*See* Am. Compl. ¶¶ 292 n.42, 503.)

Amira and omitted others, nearly all of which Barbee alleges should have been disclosed long before Speck joined Amira. (*See, e.g.*, *id.* ¶¶ 314-17.) Barbee also alleges that the March 2019 Form 20-F did not disclose that in May 2019, India's Central Bureau of Investigation ("CBI") concluded a forensic audit of Amira India's financial accounts and thereafter registered a First Information Report ("FIR") alleging that Chanana and other named individuals were involved in a criminal conspiracy to commit fraud, engage in stock manipulation, and misappropriate funds. (*See id.* ¶¶ 319, 322, 327-29, 344-45, 375-88, 449-51; Speck's Moving Br. 5.) According to the Amended Complaint, the NYSE halted trading in Amira shares beginning on August 17, 2020, right before the March 2019 Form 20-F was filed. (Am. Compl. ¶ 34 n.2.) Barbee points to the drop in stock price associated with this and the related permanent delisting of Amira, as one cause of his financial loss. (*Id.*; *see also id.* ¶¶ 469-98, 506.)

### C.     Procedural posture

In June 2021, Barbee initiated suit against Defendants for making misleading statements or omissions on behalf of Amira, in violation of both federal and state law. (*See generally* Compl., ECF No. 1.) Parallel to this federal action, Barbee commenced FINRA arbitration in June 2021 against LaCava. (ECF No. 19.) In January 2022, Wacha moved the Court to stay this matter until the final resolution of the arbitration. (ECF No. 16.) Shortly after, Speck joined Wacha's stay request. (ECF No. 17.) In response, Barbee filed a motion with FINRA to stay the arbitration pending the outcome of this suit. (ECF No. 21.) A month later, FINRA granted Barbee's continuance request and stayed the arbitration. (ECF No. 24.) The Court subsequently denied Moving Defendants' request for a stay as moot. (ECF No. 26.)

In August 2022, Barbee filed the instant Amended Complaint. (*See generally* Am. Compl.) The Amended Complaint contains seven claims as follows: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act," 15 U.S.C. § 78j(b)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) as to Defendants; (2) violations of Section 20(a)

of the Exchange Act as to all Defendants minus Amira; (3) violations of the Ohio Securities Act as to Defendants; (4) violations of the Securities Act of Washington as to Defendants; (5) violations of Title 49 § 3:52 of the Uniform Securities Law (1997): New Jersey's Securities Act ("New Jersey Uniform Securities Act") as to Defendants; (6) Common Law Fraud/Securities "Holder's Claim" as to Defendants; and (7) Negligent Misrepresentation of Material Fact as to Defendants. (*See* Am. Compl. 137-54.)

In November 2022, Wacha moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and 15 U.S.C. Section 78u-4(b) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[4] (Wacha's Moving Br. 1.) A few weeks later, Speck moved to dismiss the Amended Complaint on the same grounds. (Speck's Moving Br. 1.) The Motions are ripe for resolution.

## II.   **LEGAL STANDARD**

### A.   **Standards for Rule 12(b)(6) Motion to Dismiss**

Under Rule 8, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 231. Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. That is, the

---

[4] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.      Standards for Securities Fraud**

Section 10(b) of the Exchange Act prohibits the "use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5, which implements § 10(b), makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a claim under § 10(b) and SEC Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentations or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) and causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quotation marks and citation omitted). "[A] corporation is liable for statements by employees who have apparent authority to make them." *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (alteration in original) (internal quotation and citations omitted).

Section 20(a) of the Exchange Act creates a cause of action against individuals who exercise control over a "controlled person," including a corporation, that has committed a violation

of Section 10(b). 15 U.S.C. § 78t(a); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). Accordingly, "liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person." *Avaya*, 564 F.3d at 252; *see also In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004) ("[P]laintiffs must prove not only that one person controlled another person, but also that the 'controlled person' is liable under the Act.") (internal quotation marks and citation omitted).

Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"—a particularity requirement that "has been rigorously applied in securities fraud cases." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (alteration in original) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir. 1997)). As such, plaintiffs asserting securities fraud claims must specify "the who, what, when, where, and how: the first paragraph of any newspaper story." *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). "Although Rule 9(b) falls short of requiring every material detail of the fraud such as date, location, and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys., Ltd. Sec. Litig.*, 135 F. Supp. 2d 551, 577 (D.N.J. 2001)). Rule 9(b) governs Exchange Act claims. *Cal. Pub. Emps.' Ret. Sys.*, 394 F.3d at 144.

In addition to satisfying Rule 9(b), plaintiffs alleging securities fraud pursuant to the Exchange Act must also comply with the heightened pleading requirements of the PSLRA. The PSLRA "imposes another layer of factual particularity to allegations of securities fraud." *In re Rockefeller*, 311 F.3d at 217. To allege fraud under the PSLRA, the plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*,

the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 321 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n.12 (1976), and citing 15 U.S.C. § 78u–4(b)(1), (2)). In order to satisfy this particularity requirement, the plaintiff must plead "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A strong inference exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

## III.   **DISCUSSION**

### A.      **Wacha's Motion to Dismiss**

Wacha argues the following in moving to dismiss: (1) Barbee's securities claims against Wacha are time-barred; (2) Barbee fails to state Section 10(b) and SEC Rule 10b-5 claims against Wacha; (3) Barbee fails to state any Section 20(a) claim; (4) Barbee fails to state his state law claims; (5) Barbee fails to state a common law fraud claim; and (6) Barbee fails to state a negligent misrepresentation claim. (*See generally* Wacha's Moving Br.) The Court examines each in turn.

#### *1.      Section 10(b) and SEC Rule 10b-5 claims; section 20(a) claim*

The Court begins with Wacha's contention that Barbee's federal securities claims against him are time-barred. (*Id.* at 17.) Dismissal of untimely claims on a 12(b)(6) motion is proper where "the face of the complaint demonstrates that the plaintiff's claims are untimely." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (internal quotation marks and citation omitted); *see also Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Sec. Transactions, Inc.*, 730 F.3d 263, 280 (3d Cir. 2013) (affirming dismissal of untimely securities claims on a 12(b)(6) motion). Section 10(b) and derivative Section 20(a) or other claims must be brought within the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation." 28 U.S.C. § 1658(b). The two-year limitations period is a statute of limitations, and the five-year period is a statute of repose. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007).

Wacha first contends that Barbee's federal securities fraud claims, as a whole, are time-barred pursuant to § 1658(b)(1)'s bar on suits commenced "2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1). The two-year statute of limitations applicable to Barbee's federal securities law claims is governed by the discovery standard and "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'— whichever comes first." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)(1)). A fact is treated as "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *Pension Tr. Fund*, 730 F.3d at 275 (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)). As this Court has held:

> In assessing inquiry notice, courts analyze whether storm warnings exist [including] any financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made.

*Motamed v. Chubb Corp.*, No. 15-7262, 2020 WL 7227254, at *10 (D.N.J. Apr. 7, 2020) (citing *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3d Cir. 2001)) (internal quotation omitted).

Wacha contends that Barbee knew or should have known of the alleged securities violations well over three years before Barbee initiated suit on June 23, 2021. (Wacha's Moving Br. 18.) As an initial point, any allegations related to Wacha must arise out of alleged misrepresentations or omissions during his tenure as Amira's CFO, which ended August 21, 2017, or, at the latest, during his tenure as Executive Director, which ended in October 2017—nearly four years before this action was filed. (*See* Am. Compl. ¶¶ 22, 22.1.) Wacha contends that several "storm warnings" should have put Barbee on notice as to any alleged fraud on the part of Amira. (Wacha's Moving Br. 18.) The Court agrees.

After reviewing the submissions in this case, the Court finds that there were ample "storm warnings" that would lead a reasonable person—and especially a securities lawyer like Barbee

11

with "knowledge of and experience litigating violations of state and federal securities laws" (*see* Am. Compl. ¶ 11)—to the probability that Amira had made misleading statements or significant omissions. *See Motamed*, 2020 WL 7227254, at *10. For example, Barbee alleges that Wacha made material misrepresentations and/or omitted certain facts about the growth and amount of Amira's debt and Chanana's loans and guarantees to Amira. (Am. Compl. ¶¶ 42-44.) But the March 2017 Form 20-F disclosed the amounts of such debts in 2017 and prior fiscal years as well as the amounts of Chanana's credit and guarantees; it also stated specific risk factors related to Amira's "substantial amount of indebtedness, which could have a material adverse effect on [Amira's] financial health and . . . limit [Amira's] ability to operate [Amira's] business and impair [Amira's] competitive position." (March 2017 Form 20-F at 7.) In addition, Amira was the subject of widely publicized short-selling reports[5] as well as a class action securities litigation in 2015 and 2016 based on similar allegations concerning Amira's valuation of inventory, debt levels, and insider or affiliate credit financing, as raised by Barbee here. (*Compare, e.g.*, Am. Compl. ¶¶ 38-49 (alleging that Wacha made material misrepresentations and/or omissions regarding Amira's valuation of inventory and referencing ambiguous statements from an unidentified former Amira CFO on Amira's alleged inventory inflation), *with Reed v. Amira Nature Foods Ltd.*, No. 15-0957, 2016 WL 6571281, at *9 (C.D. Cal. July 18, 2016) (plaintiffs alleging, in partial reliance on statements of "unidentified former Amira CFO," that Amira "inflates its inventory to bank loan officers").) As a result, any reasonable investor would have contemporaneously seen at least several red flags that would have put him on notice in 2017 (or earlier) of similar issues at Amira about which Barbee complains.

Even if Barbee was not on notice by mid-2017, there were further and even more obvious "storm warnings" following Wacha's departure. At the time of Wacha's departure, five of the

---

[5] *See, e.g.*, https://www.reuters.com/article/amira-nature-bond-postponed/update-2-amira-pulls-bond-after-stock-slide-fraud-claims-idINL1N0VK1SH20150210.

seven key officers other than Chanana identified in Amira's 20-F filings for 2016, 2017, and 2018, and multiple directors, left Amira at least three years before this litigation was commenced.[6] (*See* Wacha's Moving Br. 6 n.4 (further explaining that Amira lost "nearly half of its employees" from 2015 to 2017); Am. Compl. ¶¶ 213.3-213.5 (acknowledging the departures of five individuals in management positions within Amira); March 2017 Form 20-F at 71 (setting forth the drop in employee numbers between 2015, 2015, and 2017 and explaining the employment agreements in place regarding severance).) Beyond that, Amira's SEC filings also publicly disclosed numerous important "red flags," including, in its delayed March 2018 Form 20-F: a $134 million impairment to inventory valuation; a twenty-five percent decline in revenue as compared to fiscal year 2017, its first net loss as a public company; an increase in debt that left Amira with "nil undrawn financing facilities"; and certain Amira India banking and non-performing loan issues about which Barbee states is the heart of his Amended Complaint. (March 2018 Form 20-F at 54-55, 59; Pl.'s Opp'n Br. to Wacha's Moving Br. 1.)

Perhaps most notably, the stock market provided Barbee with yet another glaring red flag in 2017-2018. While Amira's stock price had been relatively stable in the few months following Wacha's departure, by May 2018, it had lost more than half of its August 2017 value (to less than $2.50 share price per ordinary share). (Wacha's Moving Br. 21; Amira Stock Prices 4, 8, Brosnick Decl., Ex. F, ECF No. 42-8.) It then fell below $1 in October 2018 before collapsing to less than $0.50 in December 2018. (Wacha's Moving Br. 21; *see generally* Amira Stock Prices.) Thus, by December 2018—more than a year after Wacha's departure but still more than two and a half years before Barbee filed his claims—Amira's stock price had collapsed, losing more than 90% of its

---

[6] A simple comparison of Amira's Form 20-F filings for 2016, 2017 and 2018 establishes that five of Amira's seven key management officers other than Chanana departed during that two-year period ending at least three years before this litigation was filed. (*Compare* "March 2016 Form 20-F" at 57-59, Brosnick Decl., Ex. N, ECF No. 42-16 *with* "March 2017 Form 20-F" at 59-60 and March 2018 Form 20-F, Brosnick Decl., Ex. B, ECF No. 42-4.)

August 2017 value. (Wacha's Moving Br. 21; Amira Stock Prices 11.) Courts have interpreted such a market collapse to constitute a clear "storm warning," such that Barbee should have been on "inquiry notice" at that point to investigate his claims. *See, e.g.*, *Brimo v. Corp. Express, Inc.*, 229 F.3d 1135 (2d Cir. 2000) (dismissal of securities claim as untimely affirmed where earlier 50% drop in stock price would have alerted a reasonable investor to the possibility of fraud); *In re Adelphia Commc'ns Corp.*, No. 03-1529, 2005 WL 1278544, at *10 (S.D.N.Y. May 31, 2005) ("The sudden and extreme collapse of a company's stock price has been recognized as a storm warning that may trigger inquiry notice of fraud.").

Barbee lists a raft of reasons for why the Court should "[d]isregard" statutes of limitation at this stage. (Pl.'s Opp'n Br. to Wacha's Moving Br. 4-12.) Most prominently, Barbee contends that he "did not 'discover' the facts constituting the securities act violations until 2020," nor would a reasonably diligent plaintiff have discovered them beforehand, because it was not until August 2020 that Amira first disclosed that it had been in liquidation proceedings since 2019 and Amira India was litigating a share to equity conversation against Chanana that began in 2019. (*Id.* at 4-5.) Yet, as noted, the SEC forms referenced in the Amended Complaint mention some of these "storm warnings." (*See, e.g.*, March 2017 Form 20-F at 7.) And Barbee even acknowledges in the Amended Complaint that he believed Amira's contemporaneous SEC filings—such as the March 2017 Form 20-F—were misleading at the time because they did "not contain financial statements compiled or stated in accordance with Generally Accepted Accounting Principles ("GAAP"), and financial statements not prepared in compliance with GAAP are presumed misleading." (Am.

Compl. ¶¶ 60-62, 67.) Further, Barbee also concedes that he had "concerns about [Amira's] growing debt" in 2017.[7] (*Id.* ¶¶ 60, 67.)

Given all these facts, the Court concludes that a reasonably diligent plaintiff would have discovered the elements giving rise to federal securities fraud claims more than two years before June 2021. The Court, accordingly, dismisses Barbee's securities fraud claims against Wacha as time barred. *See McCullough*, 2017 WL 3675787, at *5 (dismissing plaintiff's federal securities law claims as time-barred); 28 U.S.C. § 1658(b).

### 2.    *Ohio Securities Act and New Jersey Uniform Securities Act*

Barbee also pleads claims against Wacha for violations of certain subsections of the Ohio Revised Code ("ORC") § 1707.44 and the New Jersey Uniform Securities Act. (*See* Am. Compl. ¶¶ 590-616, 636-46.) Wacha moves to dismiss these claims on the basis that they are time-barred in the same manner as the federal securities law claims. (Wacha's Moving Br. 22 & n.13.) Barbee acknowledges that his Ohio and New Jersey state securities law claims are also subject to the same two-year statute of limitations period as his federal claims. (*See* Pl.'s Opp'n Br. to Wacha's Moving Br. 13 n.4.) Because the Court has found the federal claims time-barred, the Court dismisses Barbee's claims against Wacha under the Ohio Securities Act and New Jersey Uniform Securities Act.

### 3.    *Securities Act of Washington*

Next, Barbee asserts several claims, including against Wacha, under the Securities Act of Washington. (*See* Am. Compl. ¶¶ 617-35.) Wacha moves to dismiss on the basis that such a claim

---

[7] In similarly alleging that his concerns were "tempered somewhat" by later events that "put [him] further at ease," Barbee further acknowledges that he had been previously concerned by developments and disclosures at Amira in 2017 and 2018, and so was on inquiry notice from that point. (Am. Compl. ¶ 213.6 & n.31.) Regardless of Barbee's assertion that he was later put "at ease," once triggered, the bell of inquiry notice cannot be unrung. *See, e.g.*, *In re Integrated Res. Real Est. Ltd. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1123 (S.D.N.Y. 1993) ("Once [p]laintiffs are placed on inquiry notice . . . alleged subsequent reassurances cannot be invoked to further toll the limitations period.").

is time-barred and that the Securities Act of Washington does not apply jurisdictionally because there is no "territorial nexus" between Barbee, Wacha, and Washington. (Wacha's Moving Br. 22 & n.13, 34.)

The parties dispute the appropriate choice of law. Wacha contends that the Securities Act of Washington does not govern the securities transactions or disclosures at issue in this case because of a lack of connection and contacts between Barbee and the state of Washington. (Wacha's Moving Br. 34.) Barbee contends that the choice of law question is fact intensive, making dismissal at this stage inappropriate. (Pl.'s Opp'n Br. to Wacha's Moving Br. 27-28.)

The Court agrees with Barbee. At this stage, without the benefit of discovery, the Court declines to wade into the choice of law waters presented by Barbee's claims under Washington law. *See Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 499 (D.N.J. 2014) (explaining that "it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place") (citations omitted); *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 32 (Wash. 2014) (en banc) (reversing dismissal of Washington securities claim on choice of law grounds). Thus, the Court declines to grant Wacha's motion to dismiss as to any Securities Act of Washington claim.

### 4.    *Common law fraud*

Wacha next moves to dismiss Barbee's common law fraud claim on the basis that Barbee's claims are time-barred and Barbee does not and cannot adequately plead the elements of fraud. (Wacha's Moving Br. 34.) Barbee responds that his claim is not time-barred because of the six-year statute of limitations that exists for such a claim, and that he has stated with particularity the circumstances constituting fraud or mistake as required under Rule 9(b). (Pl.'s Opp'n Br. to Wacha's Moving Br. 31-32.)

As a preliminary matter, the Court agrees with Barbee that the appropriate statute of limitations period is six years. (*Id.* at 30); N.J. Stat. Ann. § 2A:14-1 (West 2022). Because Wacha does not substantively contend that Barbee's allegations against him fall outside the six-year period, the Court declines to dismiss Barbee's common law fraud claim on timeliness grounds. The Court instead turns to Wacha's argument that Barbee cannot state a claim for common law fraud as alleged. (*See* Am. Compl. 150-53.) This Court has previously held that the elements of common law fraud are similar to fraud requirements under federal law. *See, e.g.*, *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 38 (D.N.J. 2020) (noting the "elements of fraud are: 'false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage'"). Wacha, accordingly, relies on his arguments for dismissal of Barbee's fraud claims under federal law to support his contention that Barbee cannot state a common law fraud claim. Specifically, Wacha contends that the Amended Complaint fails to allege that Wacha made any material misrepresentation or omission, did so with scienter; or that Barbee relied on Wacha as to his investment decisions. (*See* Wacha's Moving Br. 34.)

The Court begins with Wacha's arguments on scienter and reliance. Scienter is an "intent 'to deceive, manipulate or defraud.'" *In re Elecs. for Imaging, Inc. Sec. Litig.*, No. 17-5992, 2019 WL 397981, at *6 (D.N.J. Jan. 31, 2019) (quoting *Tellabs*, 551 U.S. at 313). To allege scienter, a plaintiff must plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* A "strong" inference is not merely reasonable or permissible—it must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Fain v. USA Techs., Inc.*, 707 F. App'x 91, 95 (3d Cir. 2017) (quoting *Tellabs*, 551 U.S. at 324). Scienter can be established through knowledge or recklessness. *See id.* at 96. The Third Circuit has "explicitly approved of . . . assess[ing] . . . scienter allegations individually," and then "ultimately consider[ing] the allegations as a whole." *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 115 (3d Cir. 2018) (citation omitted). The relevant inquiry for

17

recklessness is whether defendants "should have known that they were misrepresenting material facts related to the corporation[,]" *i.e.*, when defendants had "knowledge of facts or access to information contradicting their public statements." *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001).

A plaintiff alleging "reasonable reliance" on a misrepresentation must establish that he or she relied on a defendant's misrepresentation and that those misrepresentations were a proximate cause of the damage. *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr.*, 441 F. Supp. at 40. The approach to "reasonable reliance" under New Jersey law is similar to that under federal securities laws. *See Braunstein v. Benjamin Berman, Inc.*, No. 89-5344, 1990 WL 192547 (D.N.J. Sept. 12, 1990).

Upon review of the allegations and the authorities presented by the parties, the Court finds that Barbee has failed to sufficiently plead scienter and justifiable reliance on any false representation. As an initial matter, the Court finds that Barbee's allegations of scienter against Wacha center almost entirely on the fact that Wacha was CFO of Amira and signed off on filings made during his tenure. (*See, e.g.*, Am. Compl. ¶¶ 37.22-37.32, 59.) For example, Barbee alleges that Wacha "failed to self-report" certain inaccuracies or flaws "in any of Amira's current or prior SEC filings, including those he certified." (*Id.* ¶ 37.27.) Where, as is the case here, "the only relevant fact pled is that [defendant] was the [CFO] of the [c]ompany" and "the complaint offers no specific allegations of [the CFO's] knowledge," Barbee has "failed to allege that [the CFO] acted with the requisite scienter." *Zhengyu He v. China Zenix Auto Int'l Ltd.*, No. 18-15530, 2020 WL 3169506, at *9 (D.N.J. June 12, 2020); *see also In re Hertz*, 905 F.3d at 106 (certification of SEC filing cannot plead scienter in the absence of factual allegations of intent to deceive investors by the individual defendant).

The Amended Complaint's only allegations of any even hypothetical motivation are conclusory assertions that Wacha's equity grants could have motivated him to try to inflate the

value of Amira's stock, and that Wacha "was motivated to not cause the value of Chanana's stock to fall." (*See* Am. Compl. ¶¶ 50-52.1; *see also id.* ¶ 37.31 ("By knowingly including Amira India's fictional numbers in reported financials . . . Wacha acted and failed to act so recklessly as to approximate conscious deception.").) Yet such allegations that a corporate officer has a motivation to not have his or her company stock fall are allegations that could apply to nearly every corporate officer or director. And mere allegations of recklessness do not make recklessness so. *See In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004) (explaining that recklessness is "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care"). Thus, after considering the allegations, the Court finds that Barbee fails to allege sufficient facts to show scienter on the part of Wacha.

The Court also finds that Barbee fails to sufficiently allege that he justifiably relied on any misrepresentation or omission by Wacha. (Wacha's Moving Br. 31-33 (asserting that Barbee fails to plead loss causation).) *See Gutman v. Howard Sav. Bank*, 748 F. Supp. 254, 257 (D.N.J. 1990) (explaining that common law fraud in New Jersey requires a finding of justifiable reliance by plaintiff on the misrepresentation). Barbee's allegations against Wacha appear to be primarily based on: (1) alleged representations by Wacha to LaCava; and (2) the Forms 6-K for the periods ending September 2017 and December 2017. (*See* Wacha's Moving Br. 23-30; Pl.'s Opp'n Br. to Wacha's Moving Br. 1, 15.) The Court examines each category in turn.

To begin, as alluded to earlier, Barbee asserts that Wacha made alleged misrepresentations to LaCava, who purportedly repeated information to Barbee as part of recommending Amira. (Am Compl. ¶ 39.) Yet Barbee's allegations of misrepresentations regarding various financial figures appear to be either accurately disclosed in, or contradicted by, Amira's contemporaneous public disclosures of its audited financials and risk factors. (*Id.* ¶¶ 41-47, 61-66.) For example, Barbee alleges that Wacha told LaCava that "the debt load was less concerning than it appeared," and that Chanana "personally guaranteed such debt (which exceeded $200 million)" and would continue

to loan funds to Amira. (Am. Compl. ¶ 43.) But, as mentioned in the Court's analysis on "storm warnings," the March 2017 Form 20-F not only disclosed this debt, but also warned that the debt could "limit" Amira's ability to operate in the future. (March 2017 Form 20-F at 7.) And the March 2017 Form 20-F also disclosed that Chanana and another individual "issued personal guarantees of $238.0 million." (*Id.* at 12.) Perhaps in tacit recognition of these and other such consistencies, Barbee circularly asserts that "any suggestion that Wacha's various representations to LaCava are confirmed by the facts stated in the [March 2017] Form 20-F ignores the underlying fact that this [March 2017 Form 20-F] is full of fictional data to begin with." (Am. Compl. ¶ 71.4.)

Barbee's other allegations related to the March 2017 Form 20-F are conclusory assertions, not specific to Wacha, that are attributed to him solely based on his position as Amira's then-CFO. For example, Barbee further alleges that the March 2017 Form 20-F "materially overstate[d] the equity in Amira and the equity in Amira India attributable to Amira shareholders." (Am. Compl. ¶ 65.) But Barbee does not support this allegation with any facts. (*See id.*) Indeed, as Barbee acknowledges, the heart of his Amended Complaint concerns Amira India's banking and non-performing loan issues. (*See* Pl.'s Opp'n Br. to Wacha's Moving Br. 1.) Notably, however, Barbee does not allege any personal involvement by Wacha in relation to Amira India's financial crisis, except for vague allegations. For example, Barbee alleges that disclosures on Amira India that Amira eventually made in October 2018 could have been disclosed as early as 2016, when Wacha was CFO. (*See* Am. Compl. ¶ 66.9.) Indeed, Amira India's separately audited financials for 2017 were not signed off on after Wacha's resignation from Amira. (Wacha's Moving Br. 27; *see also* Am. Compl. ¶ 379 (Barbee alleging that Amira should have disclosed Amira India's insolvency no later than November 2018—nearly a year after Wacha's departure from Amira).)[8]

---

[8] Although Barbee asserts that such disclosures related to Amira India's separately audited financials should have been made sooner, it is similarly undisputed that he continued his investments in and further purchases of Amira stock not only in 2018, but in 2019 and 2020 as well, long after these disclosures were made. (*See id.* ¶ 54.2.)

Simply put, the Amended Complaint alleges no facts to show that these or other disclosures made in Amira's March 2017 Form 20-F were inaccurate.

Even if the Court were to conclude that Wacha made certain inaccurate misrepresentations or omissions, the Court finds that Barbee fails to sufficiently plead that he reasonably relied on them in making decisions on whether and when to purchase Amira stock. Barbee alleges that Wacha's representations to LaCava influenced "in part or wholly" Barbee's "decisions to invest at different time" in Amira. (*Id.* ¶¶ 39, 54.2, 213.) To the extent that Barbee had actually relied on Wacha's alleged representations, Wacha's resignation as Amira's CFO as part of the then-ongoing exodus of two-thirds of Amira's senior management would likely have caused Barbee to reevaluate his investments in Amira. Instead, Barbee continued to purchase additional Amira shares during the three-plus years following Wacha's departure. (*See* Wacha's Moving Br. 28; Am. Compl. ¶ 54.2 (Barbee pleading that he continued to purchase stock from 2018 through 2020).) *Cf. Gutman*, 748 F. Supp. at 259 (finding reasonableness of reliance where plaintiffs did sell their stock after company announced a loss).) Similarly, Barbee does not allege any facts demonstrating that anything in the March 2017 Form 20-F caused him to purchase his Amira stock, much less caused his loss or that he relied upon any alleged misrepresentation or omission in that filing to his actual detriment. (*See generally* Am. Compl.)

The Court briefly turns to Barbee's allegations arising from Amira's Forms 6-K for the periods ending September 2017 (filed November 2017) and December 2017 (filed May 2018). (*See* Am. Compl. ¶¶ 72-91.) Barbee alleges that at one point in time during the period of these filings, Wacha was the CFO for these filings. (*Id.* ¶¶ 72, 78.) Yet none of Barbee's allegations as they pertain to these filings even cursorily mention any action on the part of Wacha, perhaps because these forms were filed after his resignation. Instead, Barbee largely repeats his same conclusory allegations as alleged regarding the March 2017 Form 20-F. (*See, e.g., id.* ¶ 77 ("This filing materially overstates the equity in Amira and the equity in Amira India attributable to Amira

shareholders."); ¶ 83 (same).) Overall, the Court does not find that Barbee adequately pleads Wacha's involvement in these filings.

In sum, because Barbee does not adequately allege scienter or justifiable reliance on any false representation, the Court finds that his common law fraud claim must fail.

     5.     *Negligent misrepresentation of material fact*

Finally, Wacha moves to dismiss Barbee's negligent misrepresentation of material fact claim on the grounds that because he cannot allege the elements of fraud, he cannot state a claim for negligent misrepresentation. (Wacha's Moving Br. 35.) To establish a claim for negligent misrepresentation, a plaintiff must adequately allege "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000). Nevertheless, the element of reliance is "the same in both" negligent misrepresentation and fraud cases. *Id.*

Here, the Court finds that Barbee fails to sufficiently allege a negligent misrepresentation claim. In particular, for the same reasons as those discussed previously on the question of whether Barbee could state a claim for common law fraud, the Court finds that Barbee fails to both identify an incorrect statement made by Wacha (instead, Barbee appears to concede that Wacha's statements are consistent with filings (*see* Am. Compl. ¶ 71.4)) and to sufficiently link reliance on any such statement or omission by Wacha to his own loss. Again, the crux of Barbee's allegations of loss occurs after Wacha's departure from Amira. For example, as explained earlier, Amira did not experience its first major stock drop until November 2017, months after Wacha's departure. (Wacha's Moving Br. 31-32.) Amira's foregoing stock price history combined with its disclosures about the financial matters supposedly at issue (i.e., inventory value, equity, debt load, Amira India financials), cast doubt on Barbee's allegations of loss as a result of Wacha's alleged

misrepresentations while he was Amira's CFO. Even if Wacha's alleged misrepresentations had affected his Amira investment, Barbee had several months following Wacha's resignation as CFO to sell his position, either for a gain or minimal loss—yet, as discussed previously, Barbee continued to purchase more Amira stock after Wacha's departure and even following Amira's further financial disclosures. (*Id.* at 32.) Accordingly, the Court grants Wacha's motion to dismiss the negligent misrepresentation of material fact claim asserted against him.

### B.     Speck's Motion to Dismiss

Speck moves to dismiss based on the following arguments: (1) Barbee fails to state Section 10(b) and SEC Rule 10(b)(5) claims; (2) Barbee fails to state a Section 20(a) claim as to Speck; (3) Barbee's state law securities act claims fail to state a claim; (4) Barbee fails to adequately plead a common law fraud claim; and (5) Barbee fails to state a claim for negligent misrepresentation. (*See generally* Speck's Moving Br.) The Court examines each argument in turn.

#### 1.     Section 10(b) and SEC Rule 10b-5 claims

Speck first contends that Barbee fails to state a claim under Section 10(b) and SEC Rule 10(b)(5). (*Id.* at 7-23.) In moving to dismiss the Section 10(b) claim, Speck contests (1) scienter, (2) whether Speck made a materially false or misleading statement or omission, and (3) loss causation. (*Id.*)

To begin, Speck contends that Barbee has failed to allege any material misrepresentations or omissions, and that there is no evidence to show scienter or the intent to defraud. (*Id.* at 10-11.) The Court has previously set forth the standard for scienter. As for materiality, a misstatement or omission is material if "there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [act]." *In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 369 (3d Cir. 1993) (alterations in original) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). In other words, a misstatement or omission is material if the information "would have been viewed by the reasonable investor as having significantly altered

the total mix of information available to that investor." *Oran v. Stafford*, 226 F.3d 275, 282 (3d

Cir. 2000) (internal quotations and citations omitted).

Upon review of the allegations and the authorities presented by the parties, the Court finds

that Barbee has not sufficiently pled scienter or a material misrepresentation or omission. As

mentioned, Barbee's allegations against Speck appear to be primarily based on: (1) Amira's public

disclosures concerning the August 2019 Correspondence; (2) the March 2020 Form NT 20-F; and

(3) the March 2019 Form 20-F. The Court examines each category in turn.

Beginning with the first category, Barbee alleges that "Speck had a duty to accurately

disclose the contents of [the August 2019 Correspondence] to the public in real time," including

the August 2019 Correspondence's position on delisting. (Am. Compl. ¶¶ 287-90.) But by all

accounts, Amira did disclose the contents of the August 2019 Correspondence: Amira filed the

August 23, 2019, Form 6-K announcing the August 2019 Correspondence, as well as a press

release, which stated that Amira "was not in compliance with § 802.01E" of the NYSE Manual.

(*Id.* ¶ 282; *see generally* Aug. 23, 2019, Form 6-K; Aug. 2019 Press Release.) This section of the

NYSE Manual makes clear that Amira could suffer delisting for failure to comply with certain

deadlines and requirements. (*See* Speck's Moving Br. 11-12.) The Court finds that Barbee has

failed to adequately allege that the statements made in the August 23, 2019, Form 6-K or August

2019 Press Release were affirmatively false as would be required to state a claim for securities

fraud, and that Speck had a duty to make an additional disclosure. *See City of Edinburgh Council*

*v. Pfizer, Inc.*, 754 F.3d 159, 171 (3d Cir. 2014) (upholding dismissal where, among other reasons,

investors failed to sufficiently allege that statements in press release were affirmatively false);

*Berger v. Beletic*, 248 F. Supp. 2d 597, 603-04 (N.D. Tex. 2003) ("With regard to the possibility

of NASDAQ delisting [company]'s stock, [company's CEO] was under no duty to report the

possibility because delisting criteria and [company]'s financial information [showing company's

stock price had fallen below the minimum bid price necessary to avoid possible delisting] were

both publicly available."). In any event, if the August 23, 2019, Form 6-K did contain a material misrepresentation or omission, it is unclear whether Speck could even be held liable because he did not sign it, nor is it sufficiently alleged that he had authority over it. (*See* Aug. 23, 2019, Form 6-K at 3 (acknowledging that Chanana authorized the form).); *see also Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("For purposes of [SEC] Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

Next, Barbee alleges that several aspects of the March 2020 Form NT 20-F signed by Speck and filed on August 10, 2020, were misleading, including Amira's failure to disclose "the rapidly approaching [NYSE] deadline concerning delisting proceedings" as stated in the August 2019 Correspondence. (Am. Compl. ¶ 298.) As to the NYSE delisting notice, Speck responds that the August 2019 Correspondence concerning potential delisting "makes no mention of a Form 20-F for the fiscal year ending March 2020, nor does it mention a specific date by which a delisting would occur." (Speck's Moving Br. 3.) Yet, as Barbee notes, the March 2019 Form 20-F Speck certified, which was filed August 19, 2020, contradicts this position:

> . . . [Amira] was notified by the NYSE that it must file its required Form 20-F for the year ended March 31, 2019 and 2020, and its interim report for the period ended September 30, 2019, on or before August 16, 2020 or it would be delisted. [Amira] is unable to file these reports by the August 16, 2020 deadline imposed by the NYSE and as a result will be delisted from the NYSE.

(March 2019 Form 20-F at 31.) Regardless of this apparent contradiction, however, which does not appear to be specifically contained within Barbee's Amended Complaint, the Court finds Barbee has no actionable claim against Speck based on the conclusory allegation that Speck "chose not to say anything" about the SEC deadline concerning delisting proceedings. (*See* Am. Compl. ¶ 298.) As discussed, the relevant facts about the deadline concerning delisting proceedings were

already disclosed through the August 23, 2019, Form 6-K and the publicly available NYSE Manual referenced therein. *See Berger*, 248 F. Supp. 2d at 604.

Barbee also alleges that statements regarding the date by which Amira hoped to complete the March 2020 Form 20-F and whether it anticipated changes in the results of operations from the prior year were misleading. (*See* Am. Compl. ¶¶ 203, 300.) But even assuming these statements were misleading, they are protected by the PSLRA's safe harbor provision, which "immunizes from liability any forward-looking statement" where the plaintiff "fails to show the statement was made with actual knowledge of its falsehood." *Avaya*, 564 F.3d at 254 (citing 15 U.S.C. § 78u-5(c)(1)). And Barbee fails to allege sufficient facts that Speck had the requisite scienter with respect to any of the alleged misstatements or omissions, as mere allegations that an officer signed an SEC filing do not support an inference of scienter. *See In re Hertz*, 905 F.3d at 118 ("An allegation that a defendant signed a SOX certification attesting to the accuracy of an SEC filing that turned out to be materially false does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing.").

Finally, Barbee asserts liability against Speck for certifying the March 2019 Form 20-F—which, according to Barbee, "finally disclosed" the material information in question. (*See* Am. Compl. ¶ 34 n.2.) Barbee's claims against Speck relating to the March 2019 Form 20-F fall into two categories: (1) with respect to the allegedly material events disclosed in the March 2019 Form 20-F, Barbee claims that Amira should have disclosed those events sooner, and that certain disclosures were inadequate or insufficiently detailed; and (2) the filing should have disclosed the CBI audit and FIR charges brought against Chanana and others. (*See* Speck's Moving Br. 17 (discussing these categories).)

As for the CBI investigation and FIR charges, Barbee alleges that Speck and Amira failed to mention the existence, status, or ultimate outcome of the criminal proceedings against Chanana

and Amira India in the March 2019 Form 20-F. (Am. Compl. ¶¶ 485-86.) But Barbee fails to plead with specificity when the CBI brought its FIR charges or publicly disclosed the results of its audit. (*See generally id.*) The Amended Complaint thus does not contain sufficient facts to support the allegation that Speck had knowledge of the FIR charges (or even the CBI audit) prior to the March 2019 Form 20-F, let alone that he acted with the requisite scienter in not disclosing them. Indeed, the Amended Complaint references news organization coverage of the CBI investigation in November 2020—three months after the March 2019 Form 20-F was signed and filed (*See id.* ¶ 504 ("[I]n November 2020, several news organizations in India published stories concerning the CBI's . . . criminal allegations.").)

The Court is also not convinced that Speck can be held liable for disclosures made in the March 2019 Form 20-F that Barbee vaguely alleges should have been disclosed sooner. As discussed, the Amended Complaint contains no facts supporting any inference that Speck intentionally delayed any filing or omitted any information in an effort to deceive investors or induce them to not sell their shares. (*See generally id.*) Again, mere allegations that Speck signed SEC filings as CFO are insufficient. *See In re Hertz*, 905 F.3d at 106. Furthermore, Barbee does not plead facts demonstrating that anything in the March 2019 Form 20-F caused his loss or that he detrimentally relied on any alleged misrepresentation or omission; instead, Barbee points to that filing as having revealed the fraudulent conduct on which his claims are based. (*See, e.g.*, Am. Compl. ¶¶ 2, 34 n.2, 319-20, 322-23); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) (adequately pleading loss causation requires a direct "causal connection" between the loss and the misrepresentation, not merely one of the "tangle of factors" that affect price).)

In sum, after reviewing the allegations individually and as a whole, the Court finds that Barbee fails to establish a material misrepresentation or omission or scienter as required to assert Section 10(b) and SEC Rule 10(b)(5) claims against Speck. *See In re Hertz*, 905 F.3d at 115.

2.    *Section 20(a) claim*

The Court turns briefly to Barbee's Section 20(a) claim. To plead a claim under Section 20(a) of the Exchange Act, plaintiffs must allege (1) a primary violation of the Exchange Act by a controlled person, (2) direct or indirect control by the defendant of the primary violator, and (3) culpable participation. *Avaya*, 564 F.3d at 252. Liability under Section 20(a) is derivative of an underlying violation of Section 10(b) by the controlled person. *Id.* Because Barbee fails to make a viable primary claim against Speck, Speck cannot be liable under Section 20(a). This Court, accordingly, dismisses the Section 20(a) claim against Speck.

3.    *Ohio Securities Act*

Next, Barbee pleads claims against Speck for violations of certain subsections of the Ohio Securities Act. (*See* Am. Compl. ¶¶ 590-616.) Speck contends that Barbee's failure to allege actionable, material misrepresentation or omission and scienter renders deficient any claim under the Ohio Securities Act. (Speck's Moving Br. 25.) Barbee responds that all that he is required to plead is that Speck acted "knowingly" in making these statements or omissions. (Pl.'s Opp'n Br. to Speck's Moving Br. 20, ECF No. 46.)

While the parties expend ample ink debating the exact scienter requirement to pursue each of these claims, Barbee acknowledges that, at the very least, he needs to sufficiently allege that Speck acted "knowingly." (*See* Pl.'s Opp'n Br. to Speck's Moving Br. 20-22; *see also* Speck's Moving Br. 8-9.) Under Ohio law, a defendant "shall be deemed to have had knowledge of any matter of fact, where in the exercise of reasonable diligence, he should, prior to the alleged commission of the offense in question, have secured such knowledge." Ohio Rev. Code Ann. § 1707.29 (West 2021).

For the reasons set forth above, the Court finds that the Amended Complaint is bereft of any allegations sufficient to show that Speck knowingly made any false representation or caused Amira to sell any shares with knowledge of its insolvency at any time, as Barbee contends. (*See,*

28

*e.g.*, ¶¶ Am. Compl. 594-95.) As for the latter point, the Amended Complaint does not explain, for example, when, how, or to whom Speck purportedly caused shares to be sold, or when or how he knew of Amira's alleged insolvency; indeed, Barbee only contends that Amira "may have" been rendered insolvent at certain points after Speck joined Amira. (*See, e.g., id.* ¶ 423.) The Court grants dismissal of the Ohio Securities Act claims as to Speck's own conduct.

      4.     *Securities Act of Washington*

Barbee also asserts several claims, including against Speck, under the Securities Act of Washington. (*See* Am. Compl. ¶¶ 617-46.) The parties dispute the appropriate choice of law. Speck contends that the Securities Act of Washington does not govern the securities transactions or disclosures at issue in this case because of a lack of connection and contacts between Barbee and the state of Washington. (Speck's Moving Br. 27.) Barbee makes several arguments in response, including that but for the arbitration agreement, Barbee would have sued Washington-licensed LaCava and Ameriprise in this matter; Barbee also contends that discovery is needed to determine the choice of law question here. (Pl.'s Opp'n Br. to Speck's Moving Br. 23-25.)

The Court agrees with Barbee. Again, at this stage, without the benefit of discovery, the Court declines to wade into the choice of law waters presented by Barbee's claims under Washington law. *See Rapid Models*, 71 F. Supp. 3d at 499. Thus, the Court declines to grant Speck's motion to dismiss as to any Securities Act of Washington claim.

      5.     *New Jersey Uniform Securities Act*

Next, the Court turns to Barbee's allegations against Speck under the New Jersey Uniform Securities Act. (*See* Am. Compl. ¶¶ 636-46.) Speck moves to dismiss on the basis that Barbee cannot show scienter, as required under New Jersey law. (Speck's Moving Br. 27.) Barbee responds that he has alleged facts supporting his claim under the applicable standard. (Pl.'s Opp'n Br. to Speck's Moving Br. 26-27.) Courts have previously found that the New Jersey Uniform Securities Act mirrors the federal securities law requirements. *See, e.g., DeRobbio v. Harvest*

*Cmtys. of Sioux City, Inc.*, No. 01-1120, 2002 WL 31947203, at *6 (D.N.J. Oct. 30, 2002) ("[T]he basic elements of a cause of action under the [New Jersey Uniform Securities Act] are substantially the same as those of Section 10(b) of the Exchange Act."); *see also Wiley v. Hughes Cap. Corp.*, 746 F. Supp. 1264, 1301 (D.N.J. 1990) (stating there is "no reason to believe the requirements of [the New Jersey Uniform Securities Act] are more or less stringent than federal law" in determining whether a claim alleges scienter and meets the requirements of Rule 9(b)). Because the Court previously determined that Barbee did not sufficiently allege scienter under the federal securities law requirements, the Court finds that Barbee's allegations against Speck under the New Jersey Uniform Securities Act must also fail.

6.     *Common law fraud*

Speck also moves to dismiss Barbee's common law fraud claim because Barbee does not adequately plead that Speck made a material misrepresentation, did so with scienter, or that any misrepresentation attributable to him caused any loss. (Speck's Moving Br. 28.) Barbee responds that his claim is adequately pled under Rule 9(b). (Pl.'s Opp'n Br. to Speck's Moving Br. 27-29.) Because the elements of common law fraud are similar to the requirements for a fraud claim under federal law, the Court dismisses Barbee's common law fraud claim against Speck for the reasons set forth previously regarding Barbee's failure to plead a material misrepresentation or scienter as required to state his Section 10(b) and SEC Rule 10b-5 claims. *See Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr.*, 441 F. Supp. 3d at 38 (explaining that false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage are elements of common law fraud).

7.     *Negligent misrepresentation of material fact*

Finally, Speck moves to dismiss Barbee's negligent misrepresentation of material fact claim. (Speck's Moving Br. 28-29.) For the same reasons discussed previously regarding the Court's findings on Barbee's failure to sufficiently allege a misrepresentation or omission on the

part of Speck as required to state his Section 10(b) and SEC Rule 10b-5 claims, the Court dismisses Barbee's negligent misrepresentation of material fact claim against Speck. *See Konover Constr. Corp.*, 420 F. Supp. 2d at 370 (explaining that a plaintiff must show an "incorrect statement," negligently made and justifiably relied on, resulting in economic loss, to establish a claim for negligent misrepresentation).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court grants in part and denies in part Wacha's Motion to Dismiss and grants in part and denies in part Speck's Motion to Dismiss. An appropriate order will follow.

_____

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**
