**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAMES K. BARBEE,

       Plaintiff,

       v.

AMIRA NATURE FOODS, LTD. *et al.*,

       Defendants.

Civil Action No. 21-12894 (MAS) (DEA)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

       This matter comes before the Court upon the following motions: (1) Defendant Bruce C. Wacha's ("Wacha") and Defendant Brian M. Speck's ("Speck") (collectively "Defendants") respective Motions for Reconsideration (ECF Nos. 52, 53) of the Court's July 19, 2023 Memorandum Opinion ("Memorandum Opinion") and Order granting in part and denying in part their motions to dismiss Plaintiff's Amended Complaint (ECF Nos. 48, 49); and (2) Plaintiff James K. Barbee's ("Plaintiff") Cross-Motions for Reconsideration of the same Memorandum Opinion and Order as to the dismissal of his claims against Wacha (ECF No. 60) and Speck (ECF No. 61).[1] Plaintiff opposed Defendants' reconsideration motions on August 22, 2023 (ECF No. 63), and Defendants separately opposed Plaintiff's reconsideration motions on September 5, 2023 (ECF Nos. 65, 68). The Court has carefully considered the parties' submissions and decides the motions

---

[1] Also before the Court is Plaintiff's Emergency Motion for Leave to File the Motions for Reconsideration. (ECF No. 58.) Despite requesting leave, Plaintiff filed the instant motions on August 16, 2023. (ECF Nos. 60, 61.) Plaintiff's Motion for Leave is granted, and thus the Court considers the merits of Plaintiff's Motions for Reconsideration herein.

without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Wacha's

Motion for Reconsideration is granted. Speck's Motion for Reconsideration is denied. Plaintiff's

Cross-Motion for Reconsideration is denied as to Wacha (ECF No. 60) and granted in part and

denied in part as to Speck (ECF No. 61).

## I.    **BACKGROUND**

As detailed in the Court's previous Memorandum Opinion, Plaintiff's 155-page Amended

Complaint brings a federal securities lawsuit against multiple defendants, including: Amira Nature

Foods, Ltd. ("Amira"), Karan A. Chanana ("Chanana"), Wacha, Varun Sethi ("Sethi"), and Speck

(collectively, the "Amira Defendants"). (Mem. Op. 1-2, ECF No. 48 (citing Am. Compl., ECF No.

32).) The gravamen of Plaintiff's Amended Complaint stems from allegations that Amira's

operating subsidiary, Amira India, "fraudulently obtained roughly twelve billion rupees (roughly

$175,000) from a consortium of twelve banks, led by Canara Bank." (*Id.* at 2 (citing Am. Compl.

¶ 37.01).) The financial scheme implicated Wacha and Speck. (*Id.*) Wacha was the former Chief

Financial Officer ("CFO") of Amira and served as an Executive Director from June 2014 until at

least August 2017. (Am. Compl. ¶ 22.) Speck was Amira's CFO from June 2019 to at least June

2021—the time at which this matter was initiated. (*Id.* ¶ 30.) Plaintiff alleges "that Wacha made

misrepresentations and omissions, and Speck made intentional and deliberate omissions of

material facts 'intended to induce shareholders to not sell their shares and/or investors to purchase

shares,' all of which contributed to [Plaintiff] incurring out-of-pocket losses in excess of

$580,000." (Mem. Op. 2 (citing Am. Compl. 14 n.6, ¶ 492).)

In sum, Plaintiff's seven-Count Amended Complaint contains claims for: (1) violations of

Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5

promulgated thereunder; (2) violations of Section 20(a) of the Exchange Act against the Amira

Defendants; (3) violations of the Ohio Securities Act ("Ohio Act"); (4) violations of the Securities Act of Washington ("Washington Act"); (5) violations of Title 49 § 3.52 of the New Jersey Uniform Securities Law (1997) ("New Jersey Uniform Securities Act"); (6) Common Law Fraud/Securities "Holders Claim"; and (7) Negligent Misrepresentation of Material Fact. (Am. Compl. ¶¶ 576-669.)

In November 2022, Wacha moved to dismiss the Amended Complaint under Federal Rules of Civil Procedure[2] 9(b) and 12(b)(6), and 15 U.S.C. § 78u-4(b) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Wacha Mot. Dismiss, ECF No. 42.) In relevant part, Wacha argued that Plaintiff's federal and state securities claims were barred by the statute of limitations, and Plaintiff's remaining state law claims failed to state a claim upon which relief could be granted. (*See generally id.*) As to the remaining claim under the Washington Act, Wacha argued that it was time-barred and that the Washington Act does not apply jurisdictionally because there is no "territorial nexus" between Plaintiff, Wacha, and the State of Washington. (*Id.* at 34.) Speck followed suit shortly thereafter and separately moved to dismiss the Amended Complaint on many of the same grounds. (*See generally* Speck Mot. Dismiss, ECF No. 44.)

After reviewing the parties' submissions, this Court concluded in its Memorandum Opinion that all of Plaintiff's federal and state securities claims (Counts One, Two, Three, and Five) against Wacha were time-barred, with the exception of the Washington Act claim (Count Four). (Mem. Op. 10-14.) The Court similarly dismissed Plaintiff's federal and state law securities claims against Speck for failure to state a claim. (*Id.* at 23-28.) Moreover, Plaintiff's common law fraud (Count Six) and negligent misrepresentation (Count Seven) claims were dismissed for failure

---

[2] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

state a claim against both Defendants. (*Id.* at 16-22, 30.) This Court, however, declined to wade in a choice of law analysis under the Washington Act without first providing the parties with an opportunity to engage in further discovery. (*Id.* at 16, 29.) Considering the early stage of the proceedings, the Court declined Wacha and Speck's Motions to Dismiss the Washington Act claim. (*Id.*)

Wacha and Speck moved for reconsideration. (Wacha Mot. Recons., ECF No. 52; Speck Mot. Recons., ECF No. 53.) Plaintiff also filed two Motions for Reconsideration. (Pl.'s Mot. Recons., ECF Nos. 60, 61.) The motions are now ripe for review.

## II.   **LEGAL STANDARD**

In the District of New Jersey, Local Civil Rule 7.1 governs motions for reconsideration. *Morton v. Fauver*, No. 97-5127, 2011 WL 2975532, at *1 (D.N.J. July 21, 2011) (citing *Bowers v. NCAA*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)). Reconsideration under Local Civil Rule 7.1 is an extraordinary remedy that is rarely granted. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002). A motion for reconsideration may be based on one of three separate grounds: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) a need to correct a clear error of law or to prevent manifest injustice. *Id.* A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *See Bowers*, 130 F. Supp. 2d at 612-13. Nor is a motion for reconsideration an opportunity to ask the Court to rethink what it has already thought through. *See Interfaith Cmty. Org.*, 215 F. Supp. 2d at 507 (quoting *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990)). "Rather, the rule permits a reconsideration only when 'dispositive factual matters or controlling decisions of law' were

presented to the court but were overlooked." *Id.* (quoting *Resorts Int'l v. Greate Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992)).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Reconsideration Against Wacha

The Court begins with Plaintiff's Motion for Reconsideration as to the dismissal of his claims against Wacha. (Pl.'s Wacha Mot. Recons., ECF No. 60-1.) Plaintiff contends that: (1) the Court committed a "manifest error" in finding federal and state securities claims were time-barred (*id.* at 1-4); (2) the accrual of his claims should be "tolled" based on Amira's alleged fraudulent concealment (*id.* at 4-6); and (3) the Amended Complaint states plausible claims under Section 10(b), Section 20(a), and state securities statutes (*id.* at 6-15). Other than largely repeating many of the same arguments that were offered in opposing Wacha's underlying Motion to Dismiss, Plaintiff does not present any evidence of allegations that were overlooked or that the Court failed to consider in its Memorandum Opinion that might warrant reconsideration. (*Compare* Pl.'s Opp'n to Wacha Mot. Dismiss., ECF No. 30 *with* Pl.'s Wacha Mot. Recons.)

### i.   *Plaintiff's Federal and State Securities Claims Are Time-Barred*

As detailed in the Memorandum Opinion, Section 10(b) and derivative Section 20(a) claims must be brought within the earlier of "2 years after the discovery of the facts constituting the violation" or "5 years after such violation." (Mem. Op. 10 (quoting 28 U.S.C. § 1658(b)).) The two-year limitations period is a statute of limitations, and the five-year period is a statute of repose. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007). Indeed, the two-year statute of limitations applicable to Plaintiff's federal securities law claims is governed by the discovery standard and "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck & Co.,*

*Inc. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)(1)). Facts are "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)).

In the securities fraud context, the Third Circuit has held that a plaintiff is on "inquiry notice whenever circumstances exist that would lead a reasonable investor of ordinary intelligence, through the exercise of reasonable due diligence, to discover his or her injury." *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 251 (3d Cir. 2001). In analyzing inquiry notice, courts assess whether "storm warnings" exist, which "may include . . . any financial, legal or other data that would alert a reasonable person to the probability that misleading statements or significant omissions had been made." *Id.* at 252 ("The existence of storm warnings is a totally objective inquiry. [The p]laintiffs need not be aware of the suspicious circumstances or understand their import. It is enough that a reasonable investor of ordinary intelligence would have discovered the information and recognized it as a storm warning.").

In its Memorandum Opinion, the Court determined that it was apparent on the face of Plaintiff's Amended Complaint that he was on inquiry notice of his claim against Amira in 2017 (or even earlier). (Mem. Op. 12.) That is, "there were ample 'storm warnings'" during this period that "would lead a reasonable person—and especially a securities lawyer like [Plaintiff] with 'knowledge of and experience litigating violations of state and federal securities laws'—to the probability that Amira had made misleading statements or significant omissions." (*Id.* at 11-12 (citation omitted).) The Court listed the following "storm warnings" as examples:

- [T]he March 2017 Form 20-F disclosed the amounts of such debts in 2017 and prior fiscal years as well as the amounts of Chanana's

credit and guarantees; it also stated specific risk factors related to Amira's "substantial amount of indebtedness, which could have a material adverse effect on [Amira's] financial health and . . . limit [Amira's] ability to operate [Amira's] business and impair [Amira's] competitive position." (*Id.* at 12.)

- Amira was the subject of widely publicized short-selling reports as well as a class action securities litigation in 2015 and 2016 based on similar allegations concerning Amira's valuation of inventory, debt levels, and insider or affiliate credit financing[.] (*Id.*)

- At the time of Wacha's departure [from Amira in August 2017], five of seven key officers other than Chanana identified in Amira's 20-F filings for 2016, 2017, and 2018, and multiple directors, [had] left Amira at least three years before this litigation was commenced. (*Id.* at 12-13.)

- Amira's SEC filings publicly disclosed various "red flags," including, "in its delayed March 2018 Form 20-F: a $134 million impairment to inventory valuation; a twenty-five percent decline in revenue as compared to fiscal year 2017, its first net loss as a public company; an increase in debt that left Amira with 'nil undrawn financing facilities'; and certain Amira India banking and non-performing loan issues[.]" (*Id.* at 13.)

- Perhaps most notably, the stock market provided [Plaintiff] with yet another glaring red flag in 2017-2018. . . . [B]y May 2018, [Amira] had lost more than half of its August 2017 value (to less than $2.50 share price per ordinary share). (*Id.*)

In his moving brief, Plaintiff does not address or otherwise dispute any of the Court's findings above regarding the various "storm warnings" or "red flags" that would have placed him on "inquiry notice" to investigate his claims. (*See* Pl.'s Wacha Mot. Recons. 1-6.) Plaintiff instead chooses to disregard the above findings and reasserts that he did not "discover" the facts of the alleged securities violations until August 2020. (*See id.* at 3 (stating that "[Plaintiff] alleges when and how he discovered facts constituting the claim, and they were all discovered or disclosed by Amira in 2020").) But Plaintiff's argument evidently discounts the Court's findings regarding inquiry notice, and more significantly, the Court already addressed and considered that argument

7

when it considered Defendants' underlying motions to dismiss. (Mem. Op. 14 (noting that, "[m]ost prominently, [Plaintiff] contends that he 'did not "discover" the facts constituting the securities act violations until 2020,' nor would a reasonably diligent plaintiff have discovered them beforehand . . . .").) Plaintiff's attempt to rehash the same arguments here is denied. *In re Telfair*, 745 F. Supp. 2d 536, 561 (D.N.J. 2010) ("[M]ere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration: such disagreement should be raised through the appellate process.").

Plaintiff also raises a handful of seemingly new arguments with respect to the statute of limitations. First, Plaintiff argues that his Section 10(b) claim is not time-barred and never accrued because the statute of limitations would not begin to run until "a reasonably diligent plaintiff discovered or would have discovered facts constituting a violation, including scienter." (*Id.* at 1-2.) Without providing any substantive legal analysis, Plaintiff merely asserts that because Wacha did not act with scienter, his claim "never accrued[.]" (*Id.* at 2.) This standard is inconsistent with what this Court has previously established; that is, "a reasonably diligent plaintiff is on inquiry notice when [he] would have *discovered general facts about the fraudulent scheme by the defendant rather than specific facts about the fraud perpetrated on [him]*." *Pension Tr. Fund for Operating Eng'rs*, 730 F.3d at 272 (emphasis added) (citation omitted). Without more, Plaintiff fails to carry the burden for a motion for reconsideration on this basis. *See G-69 v. Degnan,* 748 F. Supp. 274, 275 (D.N.J. 1990) (noting that the party seeking reconsideration bears a heavy burden and "must show more than a [mere] disagreement with the Court's decision . . . .").

Finally, Plaintiff argues, for the first time on reconsideration, that his secondary control person claims are contingent on the date of accrual of his primary claims against Amira. (Pl.'s Wacha Mot. Recons. 2.) In other words, Plaintiff asserts that his secondary claims would not have

accrued until June 2019 because his claims against Amira allegedly did not accrue until that date. (*See, e.g., id.* at 2-6.) Once again, Plaintiff does not provide any legal support for this assertion that tolling of a secondary securities claim is dependent upon when the primary claim accrues. *(See id.)* Conversely, primary claims under Section 10(b) and secondary claims under Section 20(a) are subject to the same statute of limitations—claims must be brought "2 years after the discovery of the facts constituting the violation," with both types of claims subject to the same discovery standard that "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck & Co.*, 559 U.S. at 653 (quoting 28 U.S.C. § 1658(b)(1)).[3]

Consistent with the July 19, 2023 Memorandum Opinion, this Court finds that Plaintiff's Section 10(b) and Section 20(a) claims are time-barred. (Mem. Op. 10-15.) It follows that the Ohio Act and New Jersey Uniform Securities Act claims against Wacha must be dismissed because they are subject to the same two-year statute of limitations period for the federal claims.[4] (Mem. Op. 14-15.) As such, Plaintiff's motion for reconsideration as to the timeliness of his federal and state securities claims is denied.

---

[3] Plaintiff also appears to argue that his federal and state securities claims did not accrue in this matter against Wacha because Amira engaged in acts to fraudulently conceal the alleged underlying fraud. (Pl.'s Wacha Mot. Recons. 5-6.) This argument is also rejected. This concealment-related statute of limitations defense appears to be raised for the first time on reconsideration. (*See* Pl.'s Opp'n to Wacha Mot. to Dismiss 12-16.) As a matter of substance, this argument again fails to account for the Court's findings that Plaintiff was placed on inquiry notice of the alleged securities violations at least three years before Barbee initiated this lawsuit on June 23, 2021. (Mem. Op. 10-14.)

[4] Because the claims are time-barred, the Court need not consider Plaintiff's arguments as to whether he sufficiently pled violations under the federal and state securities statutes. (*See* Pl.'s Wacha Mot. Recons. 6-7.)

ii.   *Negligent Misrepresentation*

Plaintiff also moves for reconsideration on the Court's dismissal of his negligent misrepresentation claim against Wacha. (Pl.'s Wacha Mot. Recons. 7-15.) To plead a claim for negligent misrepresentation, a plaintiff must adequately allege "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quotations omitted). "Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud." *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000). Further, the element of reliance is "the same in both" negligent misrepresentation and fraud cases. *Id.*

Plaintiff argues that Wacha made several incorrect statements on which Plaintiff reasonably relied to his detriment.[5] (Pl.'s Wacha Mot. Recons. 7-15.) Even assuming, *arguendo*, that Plaintiff could identify an incorrect statement made by Wacha, the fact remains that Plaintiff has not demonstrated sufficient *reliance*[6] on any such statement or omission by Wacha at his own loss. (Mem. Op. 22.)

---

[5] Specifically, Plaintiff alleges the following misstatements: (1) Wacha made an oral misstatement and incorrectly alluded that Amira's inventory was actually worth more than the $273.1 million listed in the March 2017 Form 20-F (Pl.'s Wacha Mot. Recons. 8; Am. Compl. ¶ 61); (2) Wacha orally misstated to LaCava that Amira's plant and real property were worth 300% more than the amount listed on the balance sheet (Pl.'s Wacha Mot. Recons. 9; Am Compl. ¶ 41); (3) Wacha did not disclose that Amira could not sell the land necessary to pay down its debt without first obtaining a license (Pl.'s Wacha Mot. Recons. 9-10; Am. Compl. ¶ 68); (4) Wacha did not disclose that "Amira's debt concerns were far more serious than Wacha indicated" even though Amira's "Form 20-F [warned that] servicing the debt may limit [its] ability to operate" (Pl.'s Wacha Mot. Recons. 10); (5) Wacha did not disclose that Amira's asset to liability ratio "fell below 1.33" (Pl.'s Wacha Mot. Recons. 10-11 (citing Am. Compl. ¶¶ 66.5-66.7); and (6) Wacha made false financial statements in an Amira investor presentation in September 2016 concerning Amira's financial position (Pl.'s Wacha Mot. Recons. 11 (citing Am. Compl. ¶ 65.2).)

[6] In the Section 10(b) context, the Third Circuit has identified a variety of factors relevant to determine whether the plaintiff's reliance on an alleged misstatement was reasonable. *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 883 (3d Cir. 2000) These factors "include the

As discussed above and in the Memorandum Opinion, Plaintiff had ample opportunity to uncover and detect the alleged fraud through documents that were readily available to the public, which directly weighs against a finding of reliance here. For example, while Plaintiff alleges "Wacha told LaCava that the debt load was less concerning than it appeared," (Am. Compl. ¶ 43), Amira's March 2017 20-F reported that its debt was $224.4 million in fiscal year 2017, which had increased from $209.4 million in fiscal year 2016. (March 2017 Form 20-F filing [the "March 2017 Form 20-F"] at 49, Brosnick Decl., Ex. A, ECF No. 42-3.) Likewise, Plaintiff's allegation that "Wacha emphasized and informed LaCava that the growing debt was not only manageable, but it was a deliberate and intentional part of the Company's growth strategy and should not be a cause for concern," (Am. Compl. ¶ 44), is contradicted by the March 2017 Form 20-F disclosure that there were specific risk factors related to Amira's "substantial amount of indebtedness, which could have a material adverse effect on [Amira's] financial health and . . . limit [Amira's] ability to operate [Amira's] business and impair [Amira's] competitive position." (March 2017 Form 20-F at 7).

The Court is also mindful for purposes of reliance that Plaintiff would fall under the category of a "sophisticated investor." *Caspersen*, 441 F. Supp. 3d at 41 (citing *Straub*, 540 F.2d at 598). The Amended Complaint concedes that Plaintiff is an experienced securities lawyer and well-acquainted with the securities industry. (Am. Compl. ¶ 11.) In this capacity, Plaintiff's alleged reliance is belied by his statements that he harbored apprehensions regarding Amira's

---

existence of a fiduciary relationship, a plaintiff's opportunity to detect the fraud, the sophistication of the plaintiff, the existence of long-standing business or personal relationships, and access to the relevant information." *Id.* (citing *Straub v. Vaisman & Co., Inc.*, 540 F.2d 591, 598 (3d Cir. 1976)). Indeed, "[t]he approach to 'reasonable reliance' under New Jersey law is similar to that under federal securities laws." *Caspersen v. Oring*, 441 F. Supp. 3d 23, 40 (D.N.J. 2020) (citing *Braunstein v. Benjamin Berman, Inc.*, No. 89-5344, 1990 WL 192547 (D.N.J. Sept. 12, 1990)).

financial condition, including its debt load, as early as mid-2017. (*Id.* ¶ 67.) Plaintiff nevertheless continued to invest in Amira stock after Wacha's departure and even following Amira's further financial disclosures. (Mem. Op. 22 (noting that "[Plaintiff] had several months following Wacha's resignation as CFO to sell his position, either for a gain or minimal loss—yet, as discussed previously, [Plaintiff] continued to purchase more Amira stock . . . .").) For these reasons, Plaintiff's Amended Complaint does not sufficiently allege the element of reliance to sustain a negligent misrepresentation claim. Plaintiff's motion for reconsideration as to the Court's dismissal of this claim is denied.

**B.**     **Plaintiff's Motion for Reconsideration Against Speck**

Plaintiff also moves for reconsideration as to the dismissal of his claims against Speck on many of the same grounds. (*See* Pl.'s Speck Mot. Recons., ECF No. 61-1.) First, he argues that the Court erred in dismissing his secondary claims under Section 20(a), as well as his secondary claims under the Ohio Act and the New Jersey Uniform Securities Act. (*Id.* at 1-5.) Second, he contends that the Court erred in dismissing his negligent misrepresentation claim. (*Id.* at 5-12.) Third, Plaintiff asks that if this Court "upholds its dismissals of any of [his] claims [against Speck]," then he be permitted to file a motion to amend his pleading. (*Id.* at 12.)

        *i.*     *Section 20(a) – Control Person Claim*

The Court dismissed Plaintiff's Section 20(a) claim for "control person" liability against Speck because Plaintiff failed to adequately allege a viable primary claim against him under Section 10(b).[7] (Mem. Op. 27.) Plaintiff contends that the Court committed a manifest error in dismissing the secondary claims because "primary liability under the Act is irrelevant to a

_____

[7] As Plaintiff points out, a Section 20(a) claim *may* exist here because he alleged that Amira committed a primary violation, and that Speck was a control person over at least one of Amira's primary violations. (Pl.'s Wacha Mot. Recons. 2-3.)

[Section] 20(a) claim." (Pl.'s Speck Mot. Recons. 1-2.) Plaintiff also contends that he plausibly alleged Speck "was a control person of Amira and that Amira committed multiple primary violations of the federal act." (*Id.* at 2.) To the extent that the Court did not make findings as to the sufficiency of the control person claim against Speck, it will do so here.

Count Two of the Amended Complaint brings a claim against Speck for "control person" liability under Section 20(a) of the Act. (Am. Compl. 138-40.) Section 20(a) "creates a cause of action against individuals who exercise control over a 'controlled person,' including a corporation, that has committed a violation of § 10(b)." *Stichting Pensioenfonds ABP v. Merck & Co.*, No. 05-5060, 2012 WL 3235783, at *10 (D.N.J. Aug. 1, 2012) (citing *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)). To sustain a Section 20(a) claim, a plaintiff must adequately allege the following three elements: "(1) [whether] the defendant controlled another person or entity; (2) [whether] the controlled person or entity committed a primary violation of the securities laws; and (3) [whether] the defendant was a culpable participant in the fraud." *Id.* (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 286 (3d Cir. 2006)).

At the motion to dismiss stage, a plaintiff must plausibly allege sufficient facts as to the elements required to establish a prima facie case of liability. *In re Merck & Co.*, No. 05-1151, 2012 WL 3779309, at *10 (D.N.J. Aug. 29, 2012) (finding that requiring all elements of a control person claim to be plausibly pled is the "more sensible approach."). Relevant here, the third element of a Section 20(a) claim requires a defendant's "culpable participation," which pertains to knowing and substantial participation in the wrongdoing or inaction with the intent to further the fraud or prevent discovery. *Rochez Bros. v. Rhoades*, 527 F.2d 880, 889-90 (3d Cir. 1975). Indeed, "[d]etermining whether a defendant control person is a 'culpable participant' implies that his individual culpability, or state of mind, must be examined." *In re Merck*, 2012 WL 3779309, at *10 (quoting

*Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 247 (S.D.N.Y. 2006)). As such, "culpable participation" must be pled "*with particular facts giving rise to a strong inference that the controlling person knew or should have known* that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *Id.* (emphasis added) (quoting *Lapin*, 506 F. Supp. 2d at 221).[8]

Applying this legal standard for pleading a viable claim under Section 20(a), the Court again finds that the Amended Complaint does not contain sufficient facts to present a strong inference that Speck acted deliberately or recklessly to deceive investors or otherwise induce them to not sell their shares. (*See* Mem. Op. 23-27.) Here, Plaintiff's allegations against Speck are primarily based on: (1) Amira's public disclosures concerning the August 2019 Correspondence; (2) the March 2020 Form NT 20-F; and (3) the March 2019 Form 20-F. (*Id.* at 24.) With respect to the first category, this Court determined that Plaintiff failed to allege that the statements made in the August 23, 2019, Form 6-K or August 2019 Press Release were *affirmatively false* as would be required to state a claim for securities fraud. (*Id.*) As to the March 2020 Form NT 20-F, the Court determined that Plaintiff failed to sufficiently allege facts that show Speck acted with intent to deceive in connection with any of the alleged misstatements or omissions in this filing. (*Id.* at 26.) Last, the Court was not convinced that Speck can be held liable for disclosures made in the March 2019 Form 20-F as there were no facts supporting any inference that *Speck intentionally*

---

[8] There is a split among district court decisions within the Third Circuit as to whether culpable participation must be pled at the pleading stage. Some courts continue to hold that culpable participation need not be pled, but must be proven at trial. Others hold that it must be pled in order to withstand a motion to dismiss. *Monk v. Johnson & Johnson*, No. 10-4841, 2012 WL 1884037, at *2 (D.N.J. May 22, 2012). For the reasons herein and in these circumstances, the Court finds as persuasive the *In re Merck* decision, *supra*. The Court, therefore, will require Plaintiff to adequately plead culpable participation for his control person claim.

*delayed* any filing or omitted any information in an effort to deceive investors or induce them to not sell their shares. (*Id.* at 23-26.)

As such, Plaintiff has failed to plead that Speck was a culpable participant in Amira's alleged Section 20(a) violations. Plaintiff's Motion for Reconsideration as to the dismissal of the Section 20(a) control person claim against Speck is denied.[9]

   *ii.*   *Ohio Securities Act*

Next, Plaintiff contends that reconsideration is warranted as to the Court's dismissal of his claims for certain violations of the Ohio Act. (Pl.'s Speck Mot. Recons. 3-5.) He argues that the Court improperly dismissed "the secondary participant liability claims without analysis." (*Id.* at 3.) Plaintiff's motion for reconsideration on this basis is denied.

Under Ohio Revised Code ("O.R.C.") § 1707.41,

> (A) . . . any person that . . . offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security . . . for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts[.]

OHIO REV. CODE § 1707.41(A).

The Ohio Revised Code, under § 1707.41(B)(1), also makes directors liable for violations committed by a corporation:

---

[9] As discussed in the Memorandum Opinion, courts have previously found that the New Jersey Uniform Securities Act mirrors the federal securities law requirements. *See, e.g.*, *DeRobbio v. Harvest Cmtys. of Sioux City, Inc.*, No. 01-1120, 2002 WL 31947203, at \*6 (D.N.J. Oct. 30, 2002) ("[T]he basic elements of a cause of action under the [New Jersey Uniform Securities Act] are substantially the same as those of Section 10(b) of the Exchange Act."); *see also Wiley v. Hughes Cap. Corp.*, 746 F. Supp. 1264, 1301 (D.N.J. 1990) (stating there is "no reason to believe the requirements of [the New Jersey Uniform Securities Act] are more or less stringent than federal law" in determining whether a claim alleges scienter and meets the requirements of Rule 9(b)). For that reason, Plaintiff's allegations against Speck under the New Jersey Uniform Securities Act must also fail.

> Whenever a corporation is liable as described in division (A) of this
> section, each director of the corporation is likewise liable unless the
> director shows that the director had no knowledge of the publication
> complained of, or had just and reasonable grounds to believe the
> statement therein to be true or the omission of facts to be not
> material.

OHIO REV. CODE § 1707.41(B)(1). Plaintiff argues that § 1707.41(B)(1)'s "reasonable grounds"

defense is not applicable to Speck "since he was not a Director of Amira." (Pl.'s Speck Mot.

Recons. 3-4.) Rather, he argues liability here arises under O.R.C. § 1707.43 which creates joint

and several liability to the purchaser of "every person that has participated in or aided the seller in

any way in making such sale or contract for sale." OHIO REV. CODE § 1707.43(A).

On reconsideration, however, Plaintiff does not dispute that he needs to sufficiently allege

that Speck acted "knowingly" to sustain his Ohio Act claim. (Pl.'s Speck Mot. Recons. 3-4; *see

also* Mem. Op. 28-29.) Indeed, the Amended Complaint is premised on several subsections of

O.R.C. § 1707.44, each of which expressly requires knowledge and/or intent as an element of the

claim. (*See* Am. Compl. 140-45.) The relevant provisions are as follows:

- OHIO REV. CODE § 1707.44(B) – "No person shall *knowingly
  make or cause to be made* any false representation concerning a
  material and relevant fact" relating to the "registering" or
  "selling of any securities. (emphasis added) (*See* Am. Compl. ¶
  596.)

- OHIO REV. CODE § 1707.44(D) – "No person who is an officer .
  . . and who *knows such issuer to be insolvent* . . . shall sell any
  securities of or for any such issuer, without disclosing the fact of
  the insolvency to the purchaser." (emphasis added) (*See* Am.
  Compl. ¶ 591.)

- OHIO REV. CODE § 1707.44(F) – "No person, *with intent to
  deceive*, shall sell, cause to be sold, offer for sale, or cause to be
  offered for sale, any securities of an insolvent issuer, *with
  knowledge* that such issuer is insolvent in that the liabilities of
  the issuer exceed its assets, taken at their fair market value."
  (emphasis added) (*See* Am. Compl. ¶ 592.)

16

- OHIO REV. CODE § 1707.44(G) – "No person in purchasing or selling securities shall *knowingly* engage in any act or practice that is, in this chapter, declared illegal, defined as fraudulent, or prohibited." (emphasis added) (*See* Am. Compl. ¶ 606.)

- OHIO REV. CODE § 1707.44(J) – "No person, *with purpose to deceive*, shall make . . . any statement or advertisement as to the value of securities, or as to alleged facts affecting the value of securities, or as to the financial condition of any issuer of securities, when the person *knows* that the statement or advertisement is false in any material respect." (emphasis added) (*See* Am. Compl. ¶ 604.)

Plaintiff argues nevertheless that he need not prove any particular state of mind to establish liability beyond the basic Rule 8 pleading standards. (Pl.'s Speck Mot. Recons. 3-4.) Yet, Plaintiff has not resolved or explained the deficiencies identified by the Court in its Memorandum Opinion. The fact remains that "the Amended Complaint is bereft of any allegations sufficient to show that Speck knowingly made any false representation or caused Amira to sell any shares with knowledge of its insolvency at any time[.]" (Mem. Op. 28.) Nor does the Amended Complaint "explain, for example, when, how, or to whom Speck purportedly caused shares to be sold, or when or how he knew of Amira's alleged insolvency; indeed, [Plaintiff] only contends that Amira 'may have' been rendered insolvent at certain points after Speck joined Amira." (*Id.*) In short, Plaintiff does not present any new evidence in his Motion that would require this Court to change course—under the basic or heightened pleading standards—since he has not come forward with sufficient allegations to show that Speck made a misrepresentation with knowledge or intent to deceive, a requisite element of Plaintiff's Ohio Act claim. (Pl.'s Speck Mot. Recons. 3-4.) This Court accordingly denies reconsideration on this basis.

    *iii.*    *Common Law Fraud and Negligent Misrepresentation*

Plaintiff also moves for reconsideration as to the Court's dismissal of his common law fraud and negligent misrepresentation claims against Speck. (Pl.'s Speck Mot. Recons. 5-12.) As

to the common law fraud claim, this Court found that "[b]ecause the elements of common law fraud are similar to the requirements for a fraud claim under federal law," Plaintiff's claim for common law fraud must be dismissed as Plaintiff failed "to plead a material misrepresentation or scienter as required to state his Section 10(b) and SEC Rule 10b-5 claims." (Mem. Op. 30.) For the same reasons the Court found that Plaintiff failed to sufficiently allege a misrepresentation or omission on the part of Speck as required to state his Section 10(b) and SEC Rule 10b-5 claims, the Court dismissed Plaintiff's negligent misrepresentation of material fact claim against Speck. (*Id.* at 30-31.)

As to these claims, Plaintiff does not submit new evidence or point to a controlling decision of law that the Court previously overlooked. (*See generally* Pl.'s Speck Mot. Recons. 5-12.) Instead, Plaintiff's reference to "manifest injustice" is based on his personal disagreement with the outcome of the underlying motions. (*Id.*) Plaintiff merely recycles the same substantive assertions that he did in opposing the underlying motions to dismiss. (*See* Pl.'s Opp'n to Speck's Mot. Dismiss 31-33, ECF No. 34.) Local Civil Rule 7.1(i), however, "does not allow parties to restate arguments which the court has already considered." *Clark v. Prudential Ins. Co. of Am.*, 940 F. Supp. 2d 186, 189 (D.N.J. 2013). Plaintiff has failed to proffer any change in law, unconsidered evidence, or persuasive argument that the Court has committed a clear error of law that requires correction. Accordingly, the Court denies Plaintiff's Motion for Reconsideration as to the dismissal of his common law and negligent misrepresentation claims against Speck.

### iv.   *Plaintiff's Request for Leave to File an Amended Complaint*

Finally, "Plaintiff requests that [the] dismissal [of the aforesaid claims] be without prejudice and that [he] be granted leave to file a motion to amend the pleading."[10] (Pl.'s Speck

---

[10] It appears the request for leave to amend was raised by Plaintiff in opposing Speck's Motion to Dismiss. (*See* Pl.'s Opp'n to Speck Mot. Dismiss 30.)

Mot. Recons. 12.) Unlike the securities claims against Wacha, Speck does not contend that the claims against him are time-barred. Accordingly, Plaintiff's request for leave to file a Second Amended Complaint in this matter is granted. Plaintiff's claims against Speck are dismissed without prejudice.

### C.    Wacha and Speck's Motions for Reconsideration

While Defendants do not dispute the Court's rulings as to the insufficiency of Plaintiff's claims on six of the seven counts in the Amended Complaint, they contend that the Court did not fully address whether Plaintiff stated a claim for relief under the Washington Act. (Wacha Mot. Recons. 7-10, ECF No. 52; Speck Mot. Recons. 1-4, ECF No. 54.) Wacha argues that regardless of the choice of law issues, the "Washington Act claim still must be dismissed as both time-barred and as independently deficient for failure to factually plead any material misstatements or omissions as to Wacha." (Wacha Mot. Recons. 3.) Speck also contends—despite any choice of law issues—that the Court failed to consider, in the alternative, "whether [Plaintiff] had adequately stated a claim for relief under the Washington Securities Act" assuming that Washington law applies. (Speck Mot. Recons. 2.)

Turning first to Wacha's contention that the Washington Act claim is time-barred, the Court agrees that reconsideration is warranted here. It is undisputed that the Washington Act's statute of limitations is three years and is governed by the same discovery "in the exercise of reasonable care" standard as federal securities law. WASH. REV. CODE 21.20.430(4)(b); *see also Malone v. Clark Nuber, P.S.*, No. 07-2046, 2008 WL 2545069, at *7-8 (W.D. Wash. June 23, 2008); *Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA), LLC*, 194 Wash. 2d 253, 271 (2019) (explaining that there "is a three-year statute of limitations for any such suit, with the clock starting either at the time of discovery of the violation of [WASH. REV. CODE 21.20.010] or when

it should have been discovered with reasonable care."). Mirroring the federal "reasonably diligent" standard, Washington courts consider whether a plaintiff exercises reasonable care under an objective, reasonable person standard. *Alexander v. Cadaret, Grant & Co., Inc.*, 2007 WL 1041380, at *2 (Wash. Ct. App. Apr. 9, 2007) (*citing Mayer v. City of Seattle*, 102 Wash. App. 66, 76 (Wa. Ct. App. 2000)). This applies in the securities context and "requires investors to exercise reasonable care" from the date the violation was or could have been discovered. *Id.* at *3; *see also Douglass v. Stanger*, 101 Wash. App. 243, 256-57 (Wa. Ct. App. 2000) (affirming the dismissal of a Washington Act securities fraud claim because a reasonable person would have been on notice of the fraud more than three years prior to the commencement of the action).

As Wacha points out, the Court determined and ruled in dismissing Plaintiff's federal securities law claims as time-barred that any reasonable investor would have contemporaneously seen at least several red flags that would have put him on notice in 2017 (or earlier) of similar issues at Amira about which Barbee complains. (Mem. Op. 12.) And even if Plaintiff was not on notice in mid-2017, there were further additional and considerable "storm warnings" after Wacha left Amira in August 2017 that led to Amira's stock losing more than half of its August 2017 value by May 2018. (Wacha Mot. Recons. 2 (citing Mem. Op. 12-13).) Beyond this, Amira's SEC filings also publicly disclosed numerous important "red flags," including its delayed March 2018 Form 20-F, which detailed:

> a $134 million impairment to inventory valuation; a twenty-five percent decline in revenue as compared to fiscal year 2017, its first net loss as a public company; an increase in debt that left Amira with 'nil undrawn financing facilities'; and certain Amira India banking and non-performing loan issues about which Barbee states is the heart of his Amended Complaint.

(*See* Mem. Op. 13.) Even assuming that Plaintiff's claims arose in March 2018 (which the Court does not find for the reasons stated above and in the Memorandum Opinion), his Washington Act

claim would still fall outside of the three-year statute of limitations given that Plaintiff did not file this action until June 23, 2021. (*See* Compl., ECF No. 1.) The Court, accordingly, grants Wacha's Motion for Reconsideration on this ground and dismisses Plaintiff's claim against Wacha under the Washington Act as time barred.[11]

Turning to Speck's Motion for Reconsideration, Speck argues that the Court failed to consider the viability of the Washington Act claim "assuming arguendo" that Washington law were to apply. (Speck Mot. Recons. 2.) Speck's request for reconsideration appears to be based on a single fleeting sentence in Speck's moving brief in support of his motion to dismiss—that "the Complaint fails to allege that Speck made any false representation of material fact or omission of material fact." (Speck's Mot. Dismiss 34, ECF No. 28-1.) The crux of Speck's motion to dismiss the Washington Act claim, however, asserted that "the [Washington Act] does not govern any of the securities transactions or disclosures at issue in this case . . . [because] [t]here is no 'territorial nexus' between Plaintiff, Speck, and Washington." (*Id.* at 33-34.) Notwithstanding his prior position, Speck now takes the opportunity to fully argue that Plaintiff has failed to adequately plead his Washington Act claim. (*See* Speck Mot. Recons. 3-4.)

Motions for reconsideration are not merely "a substitute for the appellate process, [and] such motions *are not an opportunity to argue what could have been, but was not, argued in the*

_____

[11] Because the Court finds that the securities claims against Wacha are barred by the statute of limitations, Plaintiff's claims cannot be revived through subsequent pleading. The Court, therefore, dismisses the federal and state securities claims against Wacha with prejudice. *See, e.g., Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, No. 10-898, 2012 WL 3113981, at *4 (D.N.J. July 31, 2012) ("If it is clear, however, that even with the benefit of amending their complaint, a Plaintiff still could not prove compliance with the statute of limitations, then an action may be dismissed with prejudice.").

*original set of moving and responsive papers."* *Bowers*, 130 F. Supp. 2d at 613 (emphasis added).[12]

Speck's attempt to revive his previous motion to dismiss with a more detailed argument that was not raised in the first instance is unavailing. As determined in the Memorandum Opinion, at this stage, without the benefit of discovery, the Court declines to wade into the choice of law waters presented by Plaintiff's claims under Washington law. (Mem. Op. 29.) If Speck's discovery reveals that Washington law governs, then Speck may re-file his motion to that effect once discovery on the choice of law issue is complete. Speck's Motion for Reconsideration as to the Washington Act claim is denied.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Motion for Reconsideration as to the dismissal of his claims against Wacha is denied (ECF No. 60.) Plaintiff's Motion for Reconsideration as to his claims against Speck (ECF No. 61) is granted in part[13] and denied in part. Wacha's Motion for Reconsideration (ECF No. 52) is granted. Speck's Motion for Reconsideration (ECF No. 53) is denied. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[12] As set forth earlier, to prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Speck's Motion does neither of the three.

[13] Plaintiff's Motion for Reconsideration as to Speck is granted only to the extent that this Court grants him leave to file an Amended Complaint.